UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEWICKI,                                    Case No. 09-11844

                    Plaintiff,                     Thomas L. Ludington
v.                                                 United States District Judge

COMMISSIONER OF                                    Michael Hluchaniuk
SOCIAL SECURITY,                                   United States Magistrate Judge

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)

## I.      PROCEDURAL HISTORY

        A.      Proceedings in this Court

        On May 13, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L.

Ludington referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of Disability

Insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for

summary judgment. (Dkt. 9, 14).

B.     Administrative Proceedings

Plaintiff filed the instant claims on August 19, 2004, alleging that he became

unable to work on March 30, 2000.  (Dkt. 7, Tr. at 96).  The claim was initially

disapproved by the Commissioner on January 13, 2005.  (Dkt. 7, Tr. at 88-92).

Plaintiff requested a hearing and on April 9, 2007, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Regina Sobrino, who considered the case

*de novo*.  In a decision by the Appeals Council dated August 3, 2007, the ALJ

found that plaintiff was not disabled.  (Dkt. 7, Tr. at 69-79).  Plaintiff requested a

review of this decision on August 17, 2007.  (Dkt. 7, Tr. at 68).  The ALJ's

decision became the final decision of the Commissioner when the Appeals

Council, on December 12, 2008, denied plaintiff's request for review.  (Dkt. 7, Tr.

at 63-66; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

A.     ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative

hearing.  (Dkt. 7, Tr. at 77).  Plaintiff's relevant work history included

approximately 15 years as a bricklayer. (Dkt. 7, Tr. at 121). In denying plaintiff's claims, defendant Commissioner considered degenerative joint disease, degenerative disc disease, hypertension, adjustment disorder anxiety, and alcohol dependence as possible bases of disability. (Dkt. 7, Tr. at 74-75).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the date of his alleged onset of disability (March 30, 2000) through the date he was last insured (December 31, 2006). (Dkt. 7, Tr. 74). At step two, the ALJ found that plaintiff's impairments of degenerative joint disease, degenerative disc disease, hypertension, adjustment disorder/anxiety, and history of alcohol dependence were "severe" within the meaning of the second sequential step. (Dkt. 7, Tr. at 74-75). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7, Tr. at 76). At step four, the ALJ found that plaintiff could not perform his past relevant work as a brick mason. At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy, based on his residual functional capacity. (Dkt. 7, Tr. 78).

B.     Plaintiff's Claim of Error

In this matter, the ALJ found that plaintiff suffered from severe mental impairments, and further held that said impairments "impose significant limitations

Report and Recommendation
Cross Motions for Summary Judgment
*Lewicki v. Comm'r*; Case No. 09-11844

on his ability to work." (Tr. 75). More specifically, she wrote that "[h]e has mild impairment of social functioning, and moderately impaired concentration, persistence, or pace." (Tr. 75-76). She also noted that her findings were "generally consistent with the report of a medical (psychologist) examiner of the State agency in November 2005." (Tr. 76). That examiner reported that plaintiff was moderately limited in his ability to (a) understand and remember detailed instructions, (b) carry out such detailed instructions, (c) maintain attention and concentration for extended periods, and (d) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 286). According to plaintiff, at most, it is arguable that the reference to "simple, routine work" constitutes the ALJ's consideration of plaintiff's mental limitations. The hypothetical question posed to the vocational expert at the hearing below was essentially identical to the RFC ultimately set forth by the ALJ, referring to "simple routine work." (Tr. 386-397, 398). However, plaintiff argues that an ability to do even "simple routine work" would be impacted by impairment of an employee's ability to maintain attention and concentration for extended periods. Plaintiff posits that if he is unable to maintain attention and concentration for extended periods, how is he to perform the jobs the ALJ found were suitable for him – security guard, cashier, file clerk, office clerk, inspector, posting clerk, and receptionist – for eight hours a day, five days a week? Each of those jobs would

require extended attention and concentration.  Plaintiff also argues that similarly limited abilities to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerance are not addressed in the ALJ's RFC formulation, although each and every one of these restrictions would be material to an ability to maintain any of these jobs on a regular basis.  By failing to appropriately consider the mental limitations she herself set forth, the ALJ erred as a matter of law in failing to adequately formulate plaintiff's RFC.

     C.    <u>The Commissioner's Counter-Motion for Summary Judgment</u>

Plaintiff asserts that the ALJ ignored his mental limitations, although he acknowledges that the restriction to simple, routine work may be related to mental limitations.  According to the Commissioner, in finding this limitation, the ALJ was tracking Dr. Marshall's mental functional capacity assessment, which was that plaintiff "retains [the] ability to do unskilled tasks on a sustained basis."  (Tr. 284).  There are no other opinions from psychologists or physicians in the record as to what plaintiff can or cannot do.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated [the claimant's] condition, including the [moderate] pace and mental limitations, into the only concrete restrictions available to him — [the psychologist's] recommended restriction to 'simple tasks.'").  The Commissioner asserts that nothing in the record that would have required the ALJ to reject Dr. Marshall's opinion and that the Court should reject plaintiff's attempt

to use a checkbox form completed by Dr. Marshall to undermine his conclusion. The Commissioner suggests that plaintiff seeks to cherry-pick the record, highlighting those categories in which Dr. Marshall indicated moderate limitations, but ignoring Dr. Marshall's ultimate conclusion that plaintiff could do unskilled work on a sustained basis.  If Dr. Marshall thought plaintiff was unable to perform any work, the Commissioner posits, he would have checked boxes as "markedly limited."  In addition, the Commissioner argues that the moderate limitations involving detailed instructions were irrelevant because the ALJ limited plaintiff to simple, routine work.

The Commissioner also argues that the moderate limitation in concentration, persistence, or pace was not an assessment of residual functional capacity.  *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (S.S.A. 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an [residual functional capacity] assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental [residual functional capacity] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . ."); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (noting that ALJ properly went beyond a check-the box approach to develop a complete and accurate assessment of the claimant's mental impairment).   The Commissioner

argues that plaintiff also overstates Dr. Marshall's "summary conclusion" that

plaintiff was moderately limited in some specific abilities. According to the

Commissioner, plaintiff incorrectly asserts that Dr. Marshall found he was "unable

to maintain attention and concentration for extended periods," when in fact Dr.

Marshall checked only the "moderately limited" box. Likewise, all of the items in

the summary conclusion are checked either not significantly limited or moderately

limited. None is checked "markedly limited." The Commissioner argues that a

moderate limitation does not indicate or imply that plaintiff cannot work. Rather,

the regulations define a *marked* limitation as one which "is such as to interfere

seriously with your ability to function independently, appropriately, effectively,

and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

In addition to Dr. Marshall's uncontradicted opinion that plaintiff could

perform simple work on a sustained basis, the Commissioner argues that other

substantial evidence supports the ALJ's conclusion, in particular, the paucity of

mental health treatment. While plaintiff visited his primary care physicians Dr.

Macha and Dr. Golechha dozens of times over the period covered by the record,

there is only sporadic mention of mental health issues. If Plaintiff were so disabled

from a mental standpoint that he could not perform jobs such as file clerk, cashier,

or receptionist, one would expect that his doctors (who had the benefit of seeing

him dozens of times over several years) would have treated him more consistently

for mental health issues. Plaintiff never sought the services of a psychologist or psychiatrist; his only psychological evaluation was done at the request of the state agency.

The Commissioner also asserts that other substantial evidence also supports the ALJ's decision, including plaintiff's everyday activities (including driving an automobile and a four-wheeler, and hunting with a crossbow) are in serious tension with his claim of disabling mental limitations. (Tr. 77). The Commissioner points to the ALJ's observation that plaintiff himself described his depression as mild at his psychological evaluation. (Tr. 75). That evaluation also indicated that plaintiff's prognosis was good and that he had an adjustment disorder. (Tr. 261). It is noteworthy that an adjustment disorder, not a mood disorder (e.g., major depressive disorder) or a generalized anxiety disorder was diagnosed at this time. Although a panic disorder was also diagnosed, plaintiff stated that panic attacks did not occur often and that he had developed the ability to deal with them. (Tr. 256). Indeed, as noted above, there was only sporadic treatment for panic (much of which occurred when plaintiff was withdrawing from alcohol). Finally, there is no indication that plaintiff had any mental difficulties when he went back to masonry work in 2005 for 15-18 weeks, even though that job was semi-skilled. (Tr. 380 (duration), 393-94 (plaintiff's testimony about his work attempt), 396 (classifying job as semi-skilled)).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381
*et seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the

evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a

four-point scale: none, one or two, three, four or more. *Id*. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The undersigned concludes that the ALJ's conclusions regarding plaintiff's mental impairments are fully supported by the substantial evidence in the administrative record. Plaintiff's function report contains only a few mentions of mental issues. On that form, plaintiff described his daily routine, including washing laundry, visiting his parents, and making a full dinner for his wife and children. (Tr. 130-31). While he reported that he could do no longer "[g]o hunting & fishing with ease," the record shows that he went crossbow hunting every other day in season, and went fishing a few times per month. (Tr. 133). Plaintiff also shot guns, although he had to do so with his left hand. *Id.* Plaintiff reported driving both an automobile and a four-wheeler, as well as shopping at least every other day. (Tr. 132). He went out every day and denied any problems in getting along with family, friends, neighbors, or others. (Tr. 134). Plaintiff reported that he did not have problems paying attention, could follow both spoken and written directions, and did not have a problem getting along with authority figures. (Tr. 135).

In March 2000, plaintiff sought emergency treatment for a racing heartbeat (Tr. 241). While the emergency room doctor diagnosed suspected hypertension (Tr. 242), his family doctor, Dr. Mohan Macha, believed it to be a panic attack and prescribed Paxil. (Tr. 165). Plaintiff saw Dr. Macha numerous times in 2000, 2001, and 2002, but there is no indication of any other treatment for an anxiety

disorder or refills for the Paxil. (Tr. 166-171). In March 2003, a few days after discontinuing alcohol and Vicodin, plaintiff had a panic attack. (Tr. 177, 229-230). The ER physician told him he was probably going through alcohol withdrawal and gave him Ativan, which helped. (Tr. 230). Dr. Golechha, who practiced with Dr. Macha, prescribed Librium for alcohol withdrawal symptoms. (Tr. 176). He also suggested a trial of Zoloft for depression after withdrawal was complete. *Id*. Around the same time, he prescribed Wellbutrin for nicotine dependence and gave plaintiff a handout on sleep hygiene. (Tr. 180). In April, Dr. Golechha wrote additional Librium for chronic alcoholism, tremor, and anxiety. (Tr. 186). Plaintiff was prescribed Librium for alcohol withdrawal related anxiety in August. (Tr. 190).

Plaintiff underwent a consultative psychological evaluation in November 2004. He indicated that although he felt depressed and anxious, he took no medication for those conditions. (Tr. 256). He admitted to having panic attacks but stated that he had developed coping skills to deal with them. *Id*. The bulk of the "complaints and symptoms" section of this report, addressed physical complaints, not mental complaints. Plaintiff denied any past or present suicidal ideation. He also stated that "other than the panic attacks and mild depression I have not had any real problems with my mental health. I had to go to the hospital once because of the panic attacks, but it has been a while." (Tr. 257). The

psychologist diagnosed a panic disorder and an adjustment disorder with depressed mood.  (Tr. 261).  The psychologist assigned a GAF score of 55 and indicated that plaintiff's prognosis was "good."  *Id*.

Dr. Roland Marshall, PhD, a psychologist with the state agency, reviewed plaintiff's medical records.  He agreed with the results of the 2004 psychological evaluation, finding an adjustment disorder and a panic disorder.  (Tr. 275, 277). He found mild limitations in activities of daily living and in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 282).  In assessing his residual functional capacity, Dr. Marshall concluded that plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain concentration and attention for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting; but that plaintiff had no other functional limitations related to a mental impairment.  (Tr. 286).  Dr. Marshall concluded that plaintiff may work better in a low stress environment, but retained

the ability to do unskilled tasks on a sustained basis.  (Tr. 284).  The record

documents only minimal treatment of plaintiff after 2004. Plaintiff was prescribed

Lexapro in August 2005, but by December he was no longer taking it.  (Tr. 328).

In February 2006, plaintiff complained of anxiety due to his father's illness.  Dr.

Macha prescribed a short course of Xanax at a low dose (Tr. 330).

Based on the foregoing medical evidence, the substantial evidence in the

records supports the ALJ's conclusions regarding the limited nature of plaintiff's

mental impairments.  However, plaintiff argues that the ALJ's finding that plaintiff

was "moderately" limited as to concentration, persistence, and pace is not

accounted for in the hypothetical question posed to the vocational expert and relied

on by the ALJ in reaching the ultimate conclusion that there were sufficient jobs in

the economy that plaintiff could perform.  The Commissioner asserts that the

limitation in the hypothetical that plaintiff could only perform simple, routine, and

unskilled work.  (Tr. 77-78).  According to SSR 85-15, the mental demands of

unskilled work are "the abilities (on a sustained basis) to understand, carry out, and

remember simply instructions; to respond appropriately to supervision, coworkers,

and usual work situations; and to deal with changes in a routine work setting."

Decisions in this district reflect the conclusion that a moderate impairment in

concentration, persistence, and pace does not necessarily preclude simple, routine,

unskilled work.  *See e.g.*, *Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, *3

(E.D. Mich. 2009); *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich. 2005), citing, *Chafin v. Comm'r of Soc. Sec.*, 2005 WL 994577, **2, 4 (E.D. Mich. 2005) (ALJ's hypothetical question addressed plaintiff's mental deficiencies sufficiently by limiting him to "simple, unskilled work." Further, although plaintiff had "moderate" deficiencies of concentration, persistence, or pace he could nonetheless perform the work of an assembler, packager, inspector, and security monitor); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 662 (E.D. Mich. 2004) ("ALJ took into account [the] [p]laintiff's depression ... by including limitations within the hypothetical ... limiting the possible jobs to simple, unskilled, and routine work"). Similarly, the undersigned concludes that the ALJ's hypothetical question properly took into account plaintiff's mental impairments as found by the ALJ to be credible. Thus, there is no basis for overturning the ALJ's decision, which the undersigned finds is supported by substantial evidence.

    D.   <u>Conclusion</u>

    After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, was within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

s/Michael Hluchaniuk\
Michael Hluchaniuk\
United States Magistrate Judge

Date: August 23, 2010

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on August 23, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>John C. Chowning, Derri T. Thomas, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb\
Judicial Assistant\
(810) 341-7850\
darlene_chubb@mied.uscourts.gov
